# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| SENG XIONG, *et al.*, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 20-1346 (ABJ) |
| | ) | |
| UNITED STATES | ) | |
| DEPARTMENT OF TREASURY, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
|  | ) | |

## <u>MEMORANDUM OPINION</u>

On May 20, 2020, plaintiffs filed what they described as a "replevin cause of action" against the United States Department of Treasury ("Treasury"), seeking to recover funds forfeited in a criminal case, *United States v. Xiong*, No. 16-cr-167 (D. Minn. Dec. 21, 2017), in 2018.[1]

---

1   The complaint also named as defendants Chase Bank, Citibank, the Saint Paul Police Department, and Wells Fargo Bank.  Compl. ¶¶ 5–8.  This action has since been dismissed with prejudice as against each of these defendants.  *See* Stipulation and Order of Dismissal with Prejudice as to Wells Fargo Bank, N.A. Only [Dkt. # 5]; Min. Order (June 25, 2020) (terminating Wells Fargo Bank); Stipulation and Order of Dismissal with Prejudice as to Saint Paul Police Dep't [Dkt. # 7]; Min. Order (Aug. 5, 2020) (terminating Saint Paul Police Department); Stipulation and Order of Dismissal with Prejudice as to Chase Bank Only [Dkt. # 12]; Min. Order (Oct. 23, 2020) (terminating Citibank).

Compl. [Dkt. # 1] at 2–4.  Plaintiffs in this matter include the criminal defendant himself,[2] as well as the alleged victims of the fraud of which he was convicted ("victim plaintiffs").  *See* Compl. ¶ 3.

On June 6, 2021, counsel for plaintiffs passed away.  Praecipe [Dkt. # 23].  On July 13, 2021, the Court ordered plaintiffs, by September 16, 2021, to either:  (1) retain new representation; (2) request additional time to obtain new counsel; or (3) inform the Court of their desire to proceed *pro se*.  Min. Order (July 13, 2021).  No response was received from plaintiffs by the deadline, and the Court dismissed the case for want of prosecution on September 30, 2021.  Order [Dkt. # 25].  About a month later, plaintiffs filed the instant motion for relief, requesting that the Court "reopen [plaintiffs'] case that was dismissed on Sept 30, 2021."  Mot. for Relief from Order [Dkt. # 26] ("Pls.' Mot.") at 1.  Because the Court concludes that there are no reasons justifying relief from the order of dismissal, the motion will be **DENIED**.

## BACKGROUND

In 2017, a jury in the District of Minnesota convicted Seng Xiong of mail fraud, under 18 U.S.C. § 1341, and wire fraud, under 18 U.S.C. § 1343.  Verdict Form, *United States v. Xiong*, No. 16-cr-167 (D. Minn., Jan. 26, 2017) [Dkt. # 99]; *see* Am. J., *United States v. Xiong*, No. 16-

---

2    Both the complaint and the government's motion to dismiss gave rise to the impression that plaintiff Seng Xiong is the defendant in the underlying criminal case, *see e.g.*, United States' Mot. to Dismiss, and Mem. of P. & A. in Supp. Thereof [Dkt. # 19] at 1 (arguing that Seng Xiong's replevin claim is without merit because he "failed to challenge the propriety of the forfeiture proceeding either in the U.S. District Court for Minnesota, in his criminal case . . . .").  In an effort to gain further clarification, the Court ordered the parties to inform the Court whether plaintiff Seng Xiong, with the address set out in the complaint, "is the same individual named 'Seng Xiong' who was convicted of mail and wire fraud in *United States v. Xiong*, No. 16-cr-167 (D. Minn., Jan. 26, 2017)."  Min. Order (Apr. 18, 2022).  Plaintiff Xiong and other individual plaintiffs have written to the Court to confirm that plaintiff Seng Xiong is the same individual convicted in the criminal case.  *See* Resp. to Order of the Ct. [Dkt. # 27] (letter from Seng Xiong); Resps. to Order of the Ct. [Dkts. # 28–32] ("Victim Pls.' Resp. to Order of the Ct.") (letters from five victim plaintiffs).

cr-167 (D. Minn., Oct. 16, 2017) [Dkt. # 146] ("Am. J."); *see also* Compl. at 3.  His conviction

resulted from the following conduct:

> [F]rom mid-2014 to early 2016 Xiong represented to the Hmong
> community that he was working with the United Nations and the United
> States government to establish a new country for the Hmong in Southeast
> Asia.  He created a group named the Hmong Tebchaws, which translates to
> "Hmong Country," and referred to himself as Keng Ther Seng, or "First
> Leader."   Xiong's homeland project received enthusiastic support from
> many in the Hmong community who desire to return to their home country,
> to be free from persecution, and to reclaim the lives they had before the
> Vietnam War.
>
> Xiong promoted the Tebchaws and solicited donations through a conference
> call line, a YouTube channel, a radio broadcast, a website, and a personal
> cell phone number. . . .
>
> Xiong told his followers that various levels of monetary support would
> entitle donors to proportional rewards from the soon-to-be established
> Hmong government.  The best benefits would accrue to those who paid
> amounts between three and five thousand dollars, as they would receive a
> share of the government's surplus each year . . . He told his followers that
> space was limited in each donor class and that Hmong families and
> individuals needed to obtain membership to join the migration to the new
> nation.

*United States v. Xiong*, 914 F.3d 1154, 1157 (8th Cir. 2019) (affirming district court judgment).

Xiong was sentenced to eighty-seven months' imprisonment and ordered to pay $1,226,466.00 in

restitution to victims on a "Confidential Victim List" filed with the Probation Office.  Am. J.

at 2, 6.

After the defendant was convicted, the government filed a motion for a Preliminary Order of Forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c).[3]  Mot. for Prelim. Order of Forfeiture, *United States v. Xiong*, No. 16-cr-167 (D. Minn., May 1, 2017) [Dkt. # 110] at 1.  On December 19, 2017, the government filed a motion for a final order of forfeiture.  Mot. for Final Order of Forfeiture, *United States v. Xiong*, No. 16-cr-167 (D. Minn., Dec. 19, 2017) [Dkt. # 168].  The court granted the government's motion to seize $1,612,451.84 in assets from various bank accounts, cashier's checks, and money orders.  Final Order of Forfeiture, *United States v. Xiong*, No. 16-cr-167 (D. Minn., Dec. 20, 2017) [Dkt. # 170] at 2–3.  In its order, the court noted that the government

> posted a Notice of Criminal Forfeiture for a [sic] least 30 consecutive days on an official government internet site . . . providing notice of the government's intention to dispose of the property in accordance with law and of the right of third parties to petition the Court . . . for a hearing to adjudicate the validity of their alleged legal interest in the property.

*Id.* at 1.  Despite this notice, "no petitions [were] filed with the Clerk of Court as to the properties at issue in this motion."  *Id.*  And Xiong did not challenge the forfeiture order in his appeal to the Eighth Circuit.  *See generally Xiong*, 914 F.3d 1154.

In a letter dated May 12, 2018, Assistant U.S. Attorney Amber M. Brennan advised an attorney then working on behalf of some of the plaintiffs in this case of the existence of a list naming 486 individuals as victims of Xiong's fraudulent activity.  Letter from Amber M. Brennan,

---

3       Section 2461(c) provides, "[i]f a person is charged in a criminal case with a violation of an Act of Congress for which the civil or criminal forfeiture of property is authorized, the Government may include notice of the forfeiture in the indictment or information pursuant to the Federal Rules of Criminal Procedure.  If the defendant is convicted of the offense giving rise to the forfeiture, the court shall order the forfeiture of the property as part of the sentence in the criminal case pursuant to the Federal Rules of Criminal Procedure and section 3554 of title 18, United States Code."  28 U.S.C. § 2461(c).

Assistant U.S. Att'y, to Paul Applebaum, Applebaum L. Firm (May 2, 2018), Ex. A to Pls.' Mem. in Opp. to Def. United States' Mot. to Dismiss at 6–8 [Dkt. # 20] ("DOJ Letter") at 1.  Brennan wrote that "[e]very person on the list should have received a letter . . . from [her] office, telling them the amount of restitution that the Court approved for them."  *Id.* at 2.  She also stated:

> [T]he United States seized a substantial amount of money from Xiong's bank accounts during the investigation.  Those funds have been forfeited to the United States, meaning that they now belong to the government.  There is a process called "restoration" that allows the government to turn over forfeited funds to the court so that they can be used toward payment of restitution.

*Id.*[4]  Ms. Brennan went on to say that the Department of Justice "intend[ed] to seek restoration in this case, and [was] in the process of obtaining the necessary approval."  *Id.*  Almost two years later, on May 20, 2020, plaintiffs filed suit in this Court, seeking a "court order requiring the deposit of those funds" that were forfeited to the United States, but that had not been distributed to them.  Compl. ¶¶ 9–12.

On June 16, 2021, this Court received notice that counsel for plaintiffs had died.  Praecipe at 1.  The Court then gave the plaintiffs time to determine how they wished to proceed, and it ordered that by September 16, 2021:  "a new attorney for plaintiffs [must] enter[] an appearance; plaintiffs [must] file a notice informing the Court of the status of their efforts to obtain new counsel and request additional time to do so for good cause shown; or plaintiffs [must] inform the Court of their desire to proceed *pro se*."  Min. Order (July 13, 2021).  After plaintiffs failed to take any action in response to the Court's order, the Court dismissed the case for want of prosecution on September 30, 2021.  Order at 1.

---

4    18 U.S.C. § 981(e)(6) authorizes the Attorney General to transfer property that has been civilly forfeited "as restoration to any victim of the offense giving rise to the forfeiture, including, in the case of a money laundering offense, any offense constituting the underlying specific unlawful activity."

On October 26, 2021, plaintiffs asked the Court to reopen the case. Pls.' Mot. at 1. They stated that they had not found anyone to represent them after their attorney's death, and they requested that the Court grant them "more time to find a new Lawyer to represent us on our case." *Id.* But no lawyer has entered an appearance on plaintiffs' behalf in the more than six months since then.

## LEGAL STANDARD

Federal Rule of Civil Procedure 60(b) permits a district court to "relieve a party or its legal representation from a final judgment, order, or proceeding" if a party demonstrates that the judgment should be set aside for one of six enumerated grounds. These include:

> (1) mistake, inadvertence, surprise, or excusable neglect;
>
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
>
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
>
> (4) the judgment is void;
>
> (5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
>
> (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b).

The plaintiff "bears the burden of establishing 'extraordinary circumstances' warranting relief from a final judgment." *Walsh v. Hagee*, 10 F. Supp. 3d 15, 18 (D.D.C. 2013), quoting *Schoenman v. FBI*, 857 F. Supp. 2d 76, 80 (D.D.C. 2012). "[A] district court enjoys significant discretion in deciding whether to grant or deny a Rule 60(b) motion." *Comput. Prof'ls for Soc. Responsibility v. U.S. Secret Serv.*, 72 F.3d 897, 903 (D.C. Cir. 1996). The court must "balance the interest in justice with the interest in protecting the finality of judgments." *Summers v. Howard*

*Univ.*, 374 F.3d 1188, 1193 (D.C. Cir. 2004).   And as pertains to the "catch-all provision" in Section 60(b)(6), it should be used "sparingly."   *Kramer v. Gates*, 481 F.3d 788, 792 (D.C. Cir. 2007).

To grant relief from a judgment, a court must make two findings:  (1) that the circumstances of the case are "extraordinary" and present grounds justifying relief, *Kramer*, 481 F.3d at 792–93, and (2) that the movant possesses a meritorious claim in the first instance.  *Lepkowski v. U.S. Treasury*, 804 F.2d 1310, 1314 (D.C. Cir. 1986).

Although plaintiffs' motion for relief does not cite Rule 60(b), plaintiffs are not represented by counsel, and their filing must be held "to less stringent standards than formal pleadings drafted by lawyers."  *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *see also Williams v. Office of Fin. Mgmt.*, 990 F.2d 1378 n.3, 1993 WL 87967 at *2 n.3 (D.C. Cir. 1993) ("Courts have recognized that a litigant's lack of legal representation bears on the propriety of relief under Rule 60(b)."). "Accordingly, the Court can construe a *pro se* filing as a motion to reconsider."  *Nicholson v. Spencer*, 311 F. Supp. 3d 1, 3 (D.D.C. 2018), citing *Potts v. Howard Univ. Hosp.*, 623 F. Supp. 2d 68 (D.D.C. 2009).   Under the circumstances, then, the Court will construe plaintiffs' motion as one for reconsideration under Rule 60(b)(6).  *See, e.g.*, *Gray v. Walter Reed Nat'l Med. Ctr.*, No. 19-cv-2006, 2021 WL 5083437, at *1 n.1 (D.D.C. Nov. 2, 2021) (construing *pro se* litigant's motion as "seeking relief under Rule 60(b)"); *Jones v. DOJ*, 315 F. Supp. 3d 278, 280 (D.D.C. 2018) (construing *pro se* litigant's motion under Rule 60(b) even though plaintiff did not move under an established rule), aff'd sub nom. *Jones v. DOJ*, No. 18-5234, 2019 WL 1261443 (D.C. Cir. Mar. 1, 2019); *Goddard v. Serv. Emps. Int'l Union Loc. 32BJ*, 310 F.R.D. 190, 192 (D.D.C. 2015) (construing *pro se* litigant's motion as seeking relief under Rule 60(b) even though "he never invoke[d] the rule").

## ANALYSIS

The Court acknowledges that the victim plaintiffs have come forward with evidence that supports their expectation and understanding that they were entitled to receive restitution through the distribution of the forfeited funds. But that does not mean that they have shown that they are entitled to relief from a final judgment under Rule 60(b). First of all, it seems that plaintiffs have been unsuccessful in identifying an attorney to take their case and/or that some or all of them have been paid or have abandoned their efforts entirely.[5] But the more significant problem is that even if the Court were to conclude that the circumstances are "extraordinary" for purposes of the first prong of the test, reopening the case would be futile because there is no legal basis for this lawsuit that could withstand a motion to dismiss. *See Lepkowski*, 804 F.2d at 1314.

Neither Xiong nor the victim plaintiffs have a claim against the government for the forfeited funds because: (1) the statute under which the funds were forfeited specifies that funds taken under that section are not "repleviable," 18 U.S.C. § 981(c), and there is no statutory

---

5      In the criminal case in Minnesota, some of the plaintiffs recently filed submissions that are entirely inconsistent with the complaint the pending motion seeks to revive. On April 20, 2022, the convicted defendant, Seng Xiong, filed a motion to "enforce and/or modify the judgment, to deem so-called victims not victims, and to have the restitution funds returned to defendant, or to grant such other relief as the Court [d]eems appropriate." Mot. to Enforce Restitution J. and Request; to Deem So-Called Victims Not Victims; and Return of Non-Restitution Funds to Def. Seng Xiong, *United States v. Xiong*, No. 16-cr-167 (D. Minn., Apr. 20, 2022) [Dkt. # 236] at 1. According to Xiong, "the requirement of restitution is not met here, as a series of so-called victims have stated in their accompanying declarations that they are not victims of any crime and do not want these so-called restitution funds." *Id.*; *see* Def./Moving Party's Submission of Collection of Decls. from So-Called Victims Who Are Not Victims, *United States v. Xiong*, No. 16-cr-167 (D. Minn., Apr. 20, 2022) [Dkt. # 238] at 1–3 (summarizing declarations from 121 individuals, including Charles Xiong and Frederic Vang, who say they are "not victims," and declare that although they have "received a check from the United States government purporting to be restitution as a result of the USA's case against Seng Xiong," they "wish to return these funds"); Compl. at 1 (listing Charlie Soua Xiong and Frederic Vang as victim plaintiffs); *see also* Victim Pls.' Resp. to Order of the Ct. (form letters informing the Court that Seng Xiong was "wrongly convicted" for mail and wire fraud).

provision authorizing this Court to order the government to use the funds for restitution; and (2) the complaint does not state a cause of action under which Xiong, a convicted criminal, can challenge the forfeiture as wrongful in this Court.

I.   **The civil forfeiture statute, under which the government seized funds traceable to Xiong's fraud, does not allow the victim plaintiffs to recover funds through replevin and does not mandate restoration to victims.**

The sentencing in the underlying criminal case involved both an order that defendant make restitution to his victims, and an order of forfeiture.  *See* Am. J. at 6–7; Final Order of Forfeiture at 1–3.  Both are distinct mandatory obligations that arise under two different statutes; while forfeiture is directed towards disgorging ill-gotten gains, restitution is directed towards compensating the victims' losses.[6]   In accordance with the Final Order of Forfeiture, the government seized $1,612,451.84 in funds that were traceable to Xiong's fraud, and it seems from the contemporaneous correspondence that it was the intention of the government to exercise its discretion to utilize the forfeited funds to make the victims whole.  *See generally* DOJ Letter.  But plaintiffs have not pointed to any authority that would authorize the Court to order the government to follow through.

 In the case of a civil forfeiture, 18 U.S.C. § 981(e)(6) provides that the Attorney General "is authorized to retain property forfeited pursuant to this section, or to transfer such property on such terms and conditions as he may determine," including "as restoration to any victim of the

---

[6]    *See United States v. Adetiloye*, 716 F.3d 1030, 1041 (8th Cir. 2013) (noting that forfeiture and restitution "are different concepts":  one is based on the defendant's gain and the other on the victims' losses); *United States v. Hoffman-Vaile*, 568 F.3d 1335, 1344 (11th Cir. 2009) ("Although this might appear to be a double dip, restitution and forfeiture serve different goals.") (internal quotation marks omitted); *United States v. Davis*, 706 F.3d 1081, 1084 (9th Cir. 2013) ("The two payments represent different types of funds:  punitive and compensatory," and as such "are different in nature, kind, and purpose.").

offense giving rise to the forfeiture."  But this is permissive, not mandatory language, and the decision to retain forfeited assets or restore them to victims is left entirely to the discretion of the Attorney General.  *See United States v. Pescatore*, 637 F.3d 128, 137 (2d Cir. 2011) (plain language of the statute makes clear that the decision to restore is "a matter of discretion").

Moreover, the civil forfeiture statute the government invoked in this case states plainly that any "[p]roperty taken or detained under this section *shall not be repleviable*, but shall be deemed to be in the custody of the [United States]." [7]  18 U.S.C. § 981(c) (emphasis added).  Since the only claim plaintiffs have advanced in their effort to gain access to the forfeited funds in this case is one for replevin, re-opening the case would be futile.

The Court recognizes that this places innocent victims in a frustrating position if they are still seeking to be made whole:  the sentence imposed in the criminal case ordered that a sum of money be paid to them, and the government seized assets that could have been used to effectuate the restitution.  However, this does not permit plaintiffs to file a civil replevin action against the government or require that the government distribute the funds to the victims, and there is no meritorious civil claim here to be revived.

---

[7]     The government's motion and the final forfeiture order cite subsection (a)(1)(C) of the forfeiture statute, 18 U.S.C. § 981(a)(1)(C), which says that "[a]ny property, real or personal, which constitutes or is derived from proceeds traceable to a violation of [thirty-four sections] of this title" is subject to forfeiture.  Final Order of Forfeiture at 1; Mot. for Final Order of Forfeiture at 1.  It appears that subsections (a)(1)(D)(v) and (vi) may have also provided grounds for forfeiture.  Those subsections specify that "property, real or personal, which represents or is traceable to the gross receipts obtained, directly or indirectly, from a violation of . . . section 1341 (relating to *mail fraud*); or section 1343 (relating to *wire fraud*)" are subject to forfeiture.  18 U.S.C. §§ 981(a)(1)(D)(v)–(vi) (emphasis added).  Regardless of whether subsection (a)(1)(C), (a)(1)(D)(v), or (a)(1)(D)(vi) best apply, any property subject to forfeiture under all of subsection (a) may be seized by the Attorney General and shall not be repleviable.  18 U.S.C. §§ 981(b)(1), (c).

**II.    The complaint does not state a cause of action under which Seng Xiong, a convicted criminal who obtained the funds from the victim plaintiffs illicitly, can challenge forfeiture as wrongful.**

The case against reopening the case as to Seng Xiong, the defendant in the criminal action and the source of the forfeited funds, is even stronger, as the complaint simply does not state a cause of action that would entitle him to any recovery.  The complaint alleges that "each Plaintiff made a donation to create a Hmong nation overseas" and so "[t]hose funds belong to the Plaintiffs named herein and since the criminal proceeding is over, the Defendants have no legitimate reason to continue to keep the deposits."  Compl. ¶¶ 10–11.  If this is the case, then the complaint, which only seeks recovery of the funds wrongfully donated *to* Seng Xiong, does not state any basis for his recovery.  Moreover, Xiong did not challenge the forfeiture of the funds in his appeal to the Eighth Circuit, *see generally Xiong*, 914 F.3d 1154, or in any appropriate collateral action challenging the conviction.  The relief that Xiong seeks now would improperly overrule the judgment of the U.S. District Court for the District of Minnesota.  *See 37 Associates, Tr. for the 37 Forrester St., SW Trust v. REO Constr. Consultants, Inc.*, 409 F. Supp. 2d 10, 14 (D.D.C. 2006) (A "second action . . . is a collateral attack if, in some fashion, it would overrule a previous judgment.") (citation omitted).  "Unlike a direct appeal, a collateral attack questions the validity of a judgment or order in a separate proceeding that is not intended to obtain relief from the judgment."  *Id.* (citation omitted).

For these reasons, Seng Xiong is not entitled to ask this Court for relief from the judgment against him.

**CONCLUSION**

Because neither the victim plaintiffs nor Seng Xiong have shown they possess a meritorious claim entitling them to relief from a final judgment under Rule 60(b), their motion for relief will be **DENIED**.

A separate order will issue.


AMY BERMAN JACKSON
United States District Judge

DATE:  May 16, 2022